UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PREM NATH,

                    Plaintiff,

        v.                                              No. 15-CV-8183 (KMK)

SELECT PORTFOLIO SERVICING, INC.;                       OPINION & ORDER
U.S. BANK N.A., *as Indenture Trustee for*
*C.S.F.B. Trust 2002-NP14*; and LOCKE
LORD LLP,

                    Defendants.

Appearances:

Prem Nath
Blauvelt, NY
*Pro Se Plaintiff*

Casey B. Howard, Esq.
R. James DeRose, III, Esq.
Locke Lord LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Prem Nath ("Nath" or "Plaintiff") brings this Action against Select Portfolio Servicing,

Inc. ("SPS"), U.S. Bank, N.A., as indenture trustee for C.S.F.B. Trust 2002-NP14 ("U.S. Bank"),

and Locke Lord LLP ("Locke Lord," and collectively, "Defendants"), seeking compensatory and

punitive damages for allegedly fraudulent conduct involving various assignments and

agreements related to a mortgage encumbering real property located at 12 John Calvin Street,

Blauvelt, New York (the "Subject Property"). (*See* Am. Compl. (Dkt. No. 9).)[1] Before the

---

[1] Unless otherwise noted, all docket numbers refer to Case No. 15-CV-8183.

Court is Defendants' Motion To Dismiss (the "Motion").  (*See* Dkt. No. 13.)  For the following reasons, Defendants' Motion is granted.

## I.  Factual and Procedural Background

On September 4, 1998, Plaintiff executed a note (the "Note") and mortgage (the "Mortgage") with Long Beach Mortgage Company ("LBMC") to secure a loan (the "Loan") for purchase of the Subject Property.  (*See* Att'y Decl. of Casey B. Howard in Supp. of Defs.' Mot. To Dismiss Pl.'s Am. Compl. ("Howard Decl.") Ex. 10 at ¶¶ 4–5 (Dkt. No. 15); *see also* Am. Compl. 4.)[2]

On or around June 19, 2001, a foreclosure action was brought in New York Supreme Court, Rockland County, captioned *The Chase Manhattan Bank v. Prem Nath, et al.*, Index No. 3532/2001 (the "Foreclosure Action" brought in the "State Court").  (*See* Am. Compl. 4.)

On October 16, 2005, Plaintiff filed a bankruptcy petition under Chapter 7 in the United States Bankruptcy Court for the Southern District of New York (the "First Bankruptcy").  (*See* Dkt. No. 1 (05-BK-25603 Dkt.).)  Plaintiff received a discharge on March 17, 2006, (*see* Dkt. No. 12 (05-BK-25603 Dkt.)), and shortly thereafter, the Bankruptcy Court entered an order lifting the automatic stay to allow foreclosure to proceed on the Subject Property, (*see* Dkt. No. 20 (05-BK-25603 Dkt.)).

On March 18, 2010, Plaintiff executed a Settlement Agreement and Release (the "Settlement Agreement") with LaSalle Bank ("LaSalle") as Trustee for the CSFB Trust 2002-NP14.  (*See* Howard Decl. Ex. 2 ("Settlement Agreement"); *see also* Am. Compl. 5.)[3]  The

---

[2] The Court cites to Plaintiff's filings by ECF-generated page numbers in the upper right-hand corner of the pages.

[3] Plaintiff alleges that at the time the Settlement Agreement was signed, "there was no bank in [the] U.S.A. called La[S]alle Bank N.A." and that because "federal records show

Settlement Agreement states that Chase Manhattan Bank ("Chase") "assigned all right, title and interest in the subject Note and Mortgage" to LaSalle, as trustee. (Settlement Agreement 1.) The Settlement Agreement also contained a loan modification agreement (the "Loan Modification Agreement"), and stated that, in the event Plaintiff failed to make the first three timely payments, he agreed, among other things, "to waive any and all defenses" to the Foreclosure Action. (*Id.* ¶ 6.)[4]

On December 9, 2010, the State Court issued a Decision and Order granting summary judgment against Nath in the Foreclosure Action. (*See* Howard Decl. Ex. 4 ("State Court Dec. 2010 Decision").) The State Court found that Chase "ha[d] established prima facie entitlement

---

La[S]alle Bank N.A. lost its banking license in 2008 . . . it could not conduct any banking business in [the] U.S.A." (Am. Compl. 5.)

[4] The Loan Modification Agreement states that, as of March 1, 2010, the unpaid principal balance Plaintiff owed under the Note was $492,260.67. (Settlement Agreement 6.) It further states that Plaintiff promised to pay the unpaid principal balance to the order of LaSalle. (*Id.*) Plaintiff avers that the Loan Modification Agreement is "illegal" because at the time of the signing, "[P]laintiff did not receive any . . . right to rescind completed [Truth in Lending Act ('TILA')] forms [and] as a result[,] time to rescind this loan was automatically extended to [three] years." (Am. Compl. 5.)

Plaintiff fails to cite to any authority for this proposition, but appears to be referencing 15 U.S.C. § 1635(f), which states,

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

to a judgment of foreclosure and sale and [Nath] ha[d] failed to raise a material issue of fact." (*Id.* at 5.)[5]  In the same decision, the State Court rejected Plaintiff's request to rescind the Loan Modification Agreement on the grounds of mutual mistake.  (*Id.* at 2–3.)[6]  The decision led to a Judgment of Foreclosure and Sale ("State Court Foreclosure Judgment"), dated February 4, 2011, and entered on March 2, 2011, directing that the Subject Property be sold at public auction and that the proceeds of the sale be deposited with Chase.  (Howard Decl. Ex. 1 ("State Court Foreclosure Judgment").)

On or around February 8, 2011, after the State Court Foreclosure Judgment was signed, but before it was entered, Plaintiff, represented by counsel at the time, filed an order to show cause (the "Order to Show Cause") seeking, among other things, leave to renew Plaintiff's motion for summary judgment and vacatur of both (1) the State Court's December 9, 2010 Decision and (2) the Settlement Agreement and Loan Modification Agreement.  (Howard Decl. Ex. 5 ("Order to Show Cause").)  The following arguments were raised:  (1) the Tolman Affidavit lacked a "certificate of conformity," (2) the Tolman Affidavit stated that Chase was the holder of the Note and Mortgage, but the Settlement Agreement and Loan Modification Agreement stated that the Loan was assigned to LaSalle, (3) Chase was a non-existent entity when it commenced the foreclosure proceedings in June 2001, thus it lacked the capacity to

---

[5] The State Court observed that Chase offered "an affidavit of Gina Tolman, a member of its servicing agent," ("Tolman Affidavit") in support of its motion for summary judgment.  (State Court Dec. 2010 Decision 4.)  The State Court further noted that "[Nath] does not refute the contents of the Tolman [A]ffidavit."  (*Id.*)  Plaintiff now challenges the accuracy of the Tolman Affidavit in his Amended Complaint.  (*See* Am. Compl. 25–26 (referring to the Tolman Affidavit as a "false affidavit").)

[6] According to the State Court, the monthly payment of principal and interest and balloon payment amounts in the Loan Modification Agreement were erroneous, but Chase was willing to accept the mistake in drafting to Nath's favor, which would result in Chase's receipt of less than it bargained for under the Loan Modification Agreement.  (State Court Dec. 2010 Decision 2.)

commence the proceedings, to accept the assignment of the Note and Mortgage in July 2001, or to assign it to LaSalle in June 2010, (4) Chase's initial complaint filed in June 2001 contained the material misrepresentation that Chase had been assigned the Loan prior to commencement of the action, when, in fact, the purported assignment from LBMC to Chase was dated July 19, 2001, (5) the July 19, 2001 assignment ("2001 Assignment") from LMBC to Chase was invalid because it lacked a certificate of conformity, lacked a power of attorney, and was signed by an agent of the assignee, rather than by the assignor, and (6) LaSalle is a non-existent entity, because it merged into another corporation as of October 17, 2008, and thus it lacked the capacity to accept assignment of the Loan from Chase and to enter into the Settlement Agreement and Loan Modification Agreement in March 2010.  (Howard Decl. Ex. 5 ("Aff'n in Supp. of Order to Show Cause") ¶ 9.)

In a Decision and Order dated July 20, 2011, the State Court denied Nath's Order to Show Cause.  (Howard Decl. Ex. 7 ("Vacatur Denial").)  The State Court determined that Nath "ha[d] failed to offer a valid excuse for failing to submit the additional facts [relied upon in his Order to Show Cause] with the original application."  (*Id.* at 3.)  Because "[a]ll of [Nath's] 'newly' discovered facts were available at the time of the prior motion and appear[ed] to have been discoverable with appropriate diligence," Nath's motion to renew was denied.  (*Id.*)

On August 30, 2011, Plaintiff filed a bankruptcy petition under Chapter 13 in the United States Bankruptcy Court for the Southern District of New York (the "Second Bankruptcy").  (*See* Dkt. No. 1 (11-BK-23730 Dkt.).)  By that time, U.S. Bank had taken over as Trustee for the CSFB Trust 2002-NP14, and filed a proof of claim with the Bankruptcy Court on October 24, 2011, in the amount of $1,211,193.90, including an unpaid principal balance of $492,260.67, for the secured debt on the Subject Property, (*see* Dkt. No. 17-2 (11-BK-23730 Dkt.)).  Plaintiff,

through counsel, objected to U.S. Bank's proof of claim.  (Dkt. No. 17 (11-BK-23730 Dkt.).)  On

March 21, 2014, the Bankruptcy Court granted U.S. Bank's motion for summary judgment on

two independent grounds.  First, because U.S. Bank was the holder of the Note with a valid

endorsement in blank, it had standing to file and pursue the proof of claim.  (*See* Tr. of Hr'g on

Mot. for Summ. J. at 92, 98 (Dkt. No. 98) (11-BK-23730 Dkt.).)  Second, the Bankruptcy Court

held that the *Rooker-Feldman* doctrine barred it from granting Nath's claim objection, because

such a ruling would "serve as a de facto reversal of the Rockland County Orders" that recognized

and enforced U.S. Bank Trustee's rights under the Settlement Agreement.  (*Id.* at 96 (italics

omitted).)  In an order dated April 14, 2014, the Bankruptcy Court granted the Chapter 13

Trustee's motion to dismiss the case for failure to comply with certain provisions of the

Bankruptcy Code.  (*See* Dkt. No. 93 (11-BK-23730 Dkt.).)[7]

On June 11, 2014, Plaintiff filed an order to show cause in this Court seeking an

emergency stay of the sale of the Subject Property, (*see* Dkt. Nos. 5–6 (14-CV-3871 Dkt.)),

which this Court denied in a bench ruling on June 27, 2014, (*see* Dkt. No. 14 (14-CV-3871

Dkt.)).  This Court eventually affirmed the Bankruptcy Court's decision granting U.S. Bank's

motion for summary judgment on its proof of claim in a bench ruling on September 25, 2015.

(*See* Dkt. No. 25 (14-CV-3871 Dkt.).)[8]

---

[7] Specifically, the Bankruptcy Court found that Nath failed to comply with 11 U.S.C.
§ 1307(c)(1), having created unreasonable delay that is prejudicial to creditors, and 11 U.S.C.
§ 109(e), as Nath had too much debt to be an eligible debtor under Chapter 13.  (*See* Dkt. No. 93
(11-BK-23730 Dkt.).)

[8] Plaintiff has since filed a third and fourth bankruptcy petition, one under Chapter 7, (*see*
Dkt. No. 1 (14-BK-23714 Dkt.)), and one under Chapter 13, (*see* Dkt. No. 1 (15-BK-23531
Dkt.)).  Appeals from decisions of the bankruptcy court in both of those cases are pending before
this Court and will be the subjects of separate rulings.  Accordingly, procedural history relating
to these bankruptcy appeals is not recounted here.

Plaintiff filed a so-called quiet title action against SPS, U.S. Bank, JPMorgan Chase and the Internal Revenue Service (the "IRS") in this Court, captioned *Nath v. JPMorgan Chase Bank, N.A.* (*See* Dkt. No. 1 (15-CV-3937 Dkt.).)  On September 11, 2015, the defendants filed a motion to dismiss the complaint.  (*See* Dkt. No. 18 (15-CV-3937 Dkt.).)

With the above civil action pending, Plaintiff filed the instant Action against Defendants, seeking an order to show cause for a preliminary injunction and temporary restraining order, (*see* Dkt. No. 1), along with an emergency motion for a temporary restraining order to prevent the sale of the Subject Property, scheduled on October 26, 2015, (*see* Dkt. No. 2).  On October 22, 2015, the Court denied Plaintiff's application.  (*See* Dkt. No. 5.)   Plaintiff subsequently filed the original Complaint in the instant Action on October 26, 2015.  (*See* Dkt. No. 6.)

Despite Plaintiff's filing of a fourth bankruptcy petition the week of the scheduled foreclosure sale, and the subsequent motion practice before the Bankruptcy Court for the Southern District of New York, (*see* 15-BK-23531 Dkt.), the foreclosure sale occurred as scheduled on October 26, 2015.  The Subject Property was sold to U.S. Bank.  (*See* Letter from Casey B. Howard, Esq. to Court (Mar. 25, 2016) Ex. B (Dkt. No. 23) (attaching a copy of the referee's deed transferring ownership of the Subject Property to U.S. Bank).)

On September 30, 2016, the Court dismissed with prejudice Plaintiff's claims against the defendants in the quiet-title action, with the exception of the claim against the IRS challenging the procedural validity of the tax liens issued against the Subject Property.  *See Nath v. JPMorgan Chase Bank, N.A.*, No. 15-CV-3937, 2016 WL 5791193, at *13 (S.D.N.Y. Sept. 30, 2016).  With respect to that claim, and that claim only, Plaintiff was granted leave to file an amended complaint within 30 days.  *See id*.  Plaintiff filed an amended complaint on October 28,

2016, (*see* Dkt. No. 71 (15-CV-3937 Dkt.)), and on December 19, 2016, defendant IRS filed a motion to dismiss as to the remaining claim, (*see* Dkt. No. 76 (15-CV-3937 Dkt.)).[9]

Defendants filed the instant Motion and accompanying papers on December 28, 2015, (*see* Dkt. Nos. 13–15), and on January 29, 2016, Plaintiff filed his opposition, (*see* Dkt. No. 16).[10]  Defendants' filed their reply on February 26, 2016.  (*See* Dkt. No. 17.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

---

[9] The resolution of this remaining claim will be the subject of a separate ruling.

[10] In order to file the instant Motion, on November 13, 2015, Defendants sought to lift the automatic stay in connection with Nath's third and fourth bankruptcies.  (*See* Dkt. No. 47 (14-BK-23714 Dkt.); Dkt. No. 24 (15-BK-23531 Dkt.).)  On December 1, 2015, the Bankruptcy Court granted Defendants' motions for relief from the automatic stay in both bankruptcy actions. (*See* Dkt. No. 49 (14-BK-23714 Dkt.); Dkt. No. 30 (15-BK-23531 Dkt.).)

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Because Plaintiff is proceeding pro se, the Court construes his "submissions . . . liberally" and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

Furthermore, for the same reason, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)); *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (citation and internal quotation marks omitted)).

B.  Analysis

In the Amended Complaint, Plaintiff asserts thirty-nine causes of action against Defendants, the majority of which purport to sound in fraud or pertain to Plaintiff's claimed interest in the Subject Property.  (*See generally* Am. Compl.)  Defendants seek dismissal on the grounds that the majority of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, collateral estoppel, and res judicata, and Plaintiff's remaining allegations fail to state a claim. (*See generally* Mem. of Law in Supp. of Defs.' Mot. To Dismiss Pl.'s Am. Compl. ("Defs.' Mem.") (Dkt. No. 14).)  The Court agrees that some substantively indistinguishable iteration of the majority of the claims Plaintiff raises has been heard and rejected by the State Court, Bankruptcy Court, or this Court, and that Plaintiff's new allegations fail to state a claim.

1.  Rooker-Feldman

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted).  In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and applies only to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.  After *Exxon Mobil*, the Second Circuit re-examined *Rooker-Feldman* and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same).  "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third as 'substantive.'" *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

*Rooker-Feldman* would not prevent Plaintiff from "raising federal claims based on the same facts as a prior state case, . . . so long as . . . [P]laintiff complains of an injury *independent of* an adverse state court decision." *Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013).  "[T]he applicability of the *Rooker-Feldman*

doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . , but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007). *Rooker-Feldman* does not bar independent claims, even if those claims "den[y] a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Exxon*, 544 U.S. at 293 (internal quotation marks omitted); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits.").

"Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (internal quotation marks omitted), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012).  Despite Plaintiff's assertions that he "is not requesting [that] the [C]ourt . . . overturn any state court judgment of foreclosure" and that his "federal claims are for separate[,] independent ca[u]ses of action[]," (Am. Compl. 29), it is clear that Plaintiff's claims are barred under *Rooker-Feldman*.  As noted in the Court's Opinion in *Nath v. JPMorgan Chase Bank N.A*, both the judgment in the State Court Foreclosure Action and the July 20, 2011 Vacatur Denial make Plaintiff "a state-court loser" prior to the commencement of this Action.  *See* 2016 WL 5791193, at *6.  Therefore, to the extent Plaintiff's Amended Complaint seeks this Court's review of those judgments as the causes of his injuries, then Plaintiff's claims satisfy the elements of *Rooker-Feldman*.  *See Hoblock*, 422 F.3d at 85; *see also Scott*, 2013 WL 1655992, at *3 (same).

Plaintiff's claims that may be subject to the bar of *Rooker-Feldman* generally fall into four categories: claims challenging the standing of Chase Bank, claims contesting the validity of

the Loan Modification Agreement, claims pertaining to the Tolman Affidavit, and claims sounding in fraud.  The Court addresses each in turn.

### a.  Chase Bank's Standing

Underlying Plaintiff's request for relief is his challenge to Chase's standing in the Foreclosure Action.  (*See, e.g.*, Am. Compl. 6 ("Chase Bank had no standing in [the] foreclosure [a]ction"); *id.* at 16 ("Chase Bank did not exist [at the time of the foreclosure sale] . . . ."); *id.* at 19 ("The[] record fail[s] to show that Chase [B]ank ever owned th[e] mortgage."); *id.* at 20 (arguing Chase was a "[f]ake plaintiff"); *see also* (Pl.'s Reply Brief in Resp. to Mot. Submitted by Defs. To Dismiss Pl.'s Am. Compl. ("Pl.'s Opp'n") 4 (Dkt. No. 16) (asserting Defendants "falsely claim[ed] in [S]tate [C]ourt standing for . . . Chase Bank to initiate [and] maintain [the] foreclosure action.").)

As this Court has noted, the issue of Chase's standing to foreclose on the Loan was necessarily decided by the State Court when it issued the Foreclosure Judgment.  *See Nath*, 2016 WL 5791193, at *9 (Nath's quiet title claims are thus barred by *Rooker-Feldman*, "as [they] directly challenge[] the validity of the [State Court Foreclosure Judgment] by arguing [Private] Defendants lacked standing in that suit and, therefore, the state court judgment should be voided." (quoting *Gurdon v. Doral Bank*, No. 15-CV-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016), *adopted by* 2016 WL 3523737 (S.D.N.Y. June 22, 2016))).  And the State Court, in a decision dated August 25, 2015, specifically declined to address Nath's identical standing challenges in his second application to vacate the Settlement Agreement and Foreclosure Judgment.  (*See* Howard Decl. Ex. 8, at 2 ("Second Vacatur Denial") (noting that "on December 9, 2014, [Nath] again moved to vacate the Judgment of Foreclosure and Sale, essentially for the same reasons as stated [in Nath's earlier pleadings]" and holding "[t]he motion, which is

essentially a second motion to re-argue and renew, is denied for the reasons stated in the Decisions and Orders of . . . the Bankruptcy Court").)

Plaintiff's claims are therefore barred by *Rooker-Feldman* "as [they] directly challenge[] the validity of the [State Court Foreclosure Judgment] by arguing Defendants lacked standing in that suit and therefore, the state court judgment should be voided." *Gurdon*, 2016 WL 721019, at *6; *see also Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (dismissing as barred by *Rooker-Feldman* a claim "asking th[e] [c]ourt to find that [the] [d]efendant does not own the [n]ote or [m]ortgage," where each "must have been found to be valid in order for the state court to issue a judgment of foreclosure on the property in favor of [t]he defendant"). Plaintiff's allegation that "the state court judgment is void, and should be vacated or set aside . . . is precisely the type of case *Rooker-Feldman* doctrine bars." *Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 247 (D. Conn. 2016) (alteration and internal quotation marks omitted).

As Plaintiff's attempts to have this Court invalidate the determination that Chase had standing to foreclose on the Subject Property are barred by *Rooker-Feldman*, *see Vossbrinck*, 773 F.3d at 427 (finding claims asking the "federal court to review the state proceedings and determine that the foreclosure judgment was issued in error" are barred by *Rooker-Feldman*), this Court dismisses those claims for lack of jurisdiction.

### b.  Loan Modification Agreement

Plaintiff additionally contests the validity of the Loan Modification Agreement, dated March 18, 2010, and various assignments in the chain of title for the Subject Property.  (*See, e.g.*, Am. Compl. 20 (alleging "[the] loan modification has nothing to do with this property"); *id.* at 25–26 (alleging Defendants made "patently false [statements about loan assignment]"); *id.* at 28

(arguing there was an "illegal loan modification").)  Among other complaints, Plaintiff argues

that the Loan Modification Agreement violated TILA, the loan modification was conducted by a

non-existent entity, Plaintiff never signed the underlying mortgage, and an improper interest rate

was used to calculate the loan.  (*See, e.g.*, *id.* at 5–6, 15–16, 19, 20, 25–26, 28.)[11]  In its decision

dated December 9, 2010, the State Court denied Nath's motion for an order rescinding the Loan

Modification Agreement and motion to be relieved from its terms based on the reasons raised in

the Amended Complaint.  (*See* State Court Dec. 2010 Decision 2–4.)  Plaintiff's challenges to

the assignments necessarily impugn the State Court's finding that U.S. Bank had standing

because "[Plaintiff's] claims seek to review and reject the judgment of foreclosure on the

grounds that the assignments were invalid and that U.S. Bank had no right to the property at

issue in the foreclosure proceeding."  *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d

491, 504 (S.D.N.Y. 2016).  Thus, as with the above claims premised on Chase's lack of standing,

---

[11] As noted in the Court's Opinion in *Nath v. JPMorgan Chase Bank, N.A.*, this Court has held—now multiple times—that Plaintiff fails to state a claim under TILA.  2016 WL 5791193, at *9 n.15.  Plaintiff presents for the third time an argument that the Supreme Court's decision in *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015), extended his time to rescind the Mortgage, which, he claims, he did shortly after executing the Loan Modification Agreement.  (*See, e.g.*, Am. Compl. 8, 17–18; *see also* Pl.'s Opp'n 3.)  "TILA disclosure requirements do not apply to forbearance or loan modification agreements that simply reduce the interest rate and payment schedule of a loan."  *De Jose v. EMC Mortg. Corp.*, No. 11-CV-139, 2011 WL 1539656, at *7 (N.D. Cal. Apr. 18, 2011); *see also Diamond v. One West Bank.*, No. 09-CV-1593, 2010 WL 1742536, at *5 (D. Ariz. Jan. 4, 2011) ("Generally . . . a loan modification does not require additional TILA disclosures, particularly where no new monies are advanced."), *amended by* 2010 WL 2200501 (D. Ariz. Jan. 4, 2011), *reconsideration denied*, 2010 WL 2691624 (D. Ariz. July 6, 2010).  The Loan Modification Agreement "merely re-negotiated the terms of [Nath's] existing loan" and thus "TILA does not apply."  *Johnson v. Bank of Am., N.A.*, No. 11-CV-42, 2014 WL 6694013, at *1 (D. Idaho Sept. 16, 2014).  (*See also* Settlement Agreement 8 (stating that "nothing in the [Modification Agreement]" should be "understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument").  Thus, TILA has no application to the Settlement Agreement and Plaintiff's claim under TILA is, once more, dismissed.

the Court declines to revisit the validity of the Loan Modification Agreement and re-examine the State Court's Foreclosure Judgment, as such review is barred by the *Rooker-Feldman* doctrine.

### c.  Tolman Affidavit

Plaintiff also attacks the Affidavit of Gina Tolman, dated July 14, 2010, and submitted in State Court.  (*See* Howard Decl. Ex. 3 ("Tolman Aff.").)   Plaintiff avers that statements contained within the affidavit regarding the assignment of the mortgage are "patently false," that the signer lacked personal knowledge of the mortgage records, and that the affidavit contains errors in connection with the stated interest rate.  (*See* Am. Compl. 25–27, 28.)  Specifically, Plaintiff argues that "[i]f Gina Tolman had not submitted this fraudulent affidavit . . . [P]laintiff would not have lost the [Subject Property]."  (*Id.* at 27.)  Plaintiff's attacks on the Tolman Affidavit are not novel; Plaintiff raised identical challenges in his submissions to the State Court on his motion for renewal, (*see* Aff'n in Supp. of Order to Show Cause ¶¶ 18–26), which the State Court declined to consider, (*see* Vacatur Denial 3).[12]  Plaintiff's claims of fraud are belied by the State Court's express reliance on the Tolman Affidavit in its December 9, 2010 Decision. (*See* State Court Dec. 2010 Decision 4 & n.5.)  Any attempt by this Court to reconsider the contents of the Tolman Affidavit and accordingly, reverse the State Court's Foreclosure Judgment, as Plaintiff requests, would run afoul of the *Rooker-Feldman* doctrine.

### d.  Fraud

Plaintiff's numerous claims that the Foreclosure Judgment "was procured by fraud does not remove his claims from the ambit of *Rooker-Feldman*."  *Smith v. Weinberger*, 994 F. Supp.

---

[12] Nath originally did not raise a challenge to the Tolman Affidavit, (*see* State Court Dec. 2010 Decision 4 ("[Nath] does not refute the contents of the Tolman [A]ffidavit.")), but later argued that "new facts" as to the Affidavit's lack of a certificate of conformity and issues of fact as to proper assignment warranted the relief requested in his motion to renew, (*see* Aff'n in Supp. of Order to Show Cause ¶¶ 18–26).

418, 424 (E.D.N.Y. 1998); *see also Levitin v. Homburger*, 932 F. Supp. 508, 518–19 (S.D.N.Y. 1996) (finding the district court was without jurisdiction to decide the plaintiff's claim that the defendant obtained the foreclosure judgment from state court by fraud), *aff'd*, 107 F.3d 3 (2d Cir. 1997).

Plaintiff asserts that "[his] injuries are exclusively caused by Defendants['] fraud [and] illegal conduct," (Pl.'s Opp'n 8), and frames his Action as specifically "*not* requesting [that] the [C]ourt . . . overturn any state court judgment," (Am. Compl. 29 (emphasis added)). However, the injuries of which Plaintiff complains undeniably result from claims already litigated (and re-litigated) before the State Court.

Although Plaintiff is careful to not "directly challenge[] the validity of the [State Court Foreclosure Judgment]" or argue that the "state court judgment should be voided," *Gurdon*, 2016 WL 721019, at *6, his numerous claims of fraud unquestionably attack the soundness of that judgment. If this Court were to declare that the alleged fraud occurred during the State Court proceedings and award Plaintiff the damages he seeks, "it would effectively be reversing a judgment of the state court." *Bernstein v. New York*, No. 06-CV-5681, 2007 WL 438169, at *6 (S.D.N.Y. Feb. 9, 2007); *see also Hoblock*, 422 F.3d at 88 ("Can a federal plaintiff avoid *Rooker-Feldman* simply by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not."). Indeed, Plaintiff himself asserts that the outcome of the State Court proceedings would have been different had Defendants not committed the purported fraudulent acts. (*See, e.g.*, Am. Compl. 9 ("Had [Locke Lord] revised [the] attorney affidavit in light of . . . new factual information, [the] [S]tate [C]ourt would not have allowed [the] foreclosure sale to go through [and] would have made [a] different decision."); *id.* at 11 ("[I]f [the] fake blank endorsement was never created,

[the] court would have disallowed mortgage proof of claim #9."); *id.* at 16 (arguing "the sale of the [Subject Property] conducted on October 26, 2015 stands null [and] void"); *id.* at 19 (asserting that the "foreclosure judgment was obtained by fraud"); *id.* ("This foreclosure was a fake creation of [SPS] in cahoots with their attorneys."); *id.* at 20 (arguing the "[Subject Property] was foreclosed illegally"); *id.* at 23 (asserting violations occurred as a result of the "pursui[t of] this illegal foreclosure by illegal conduct"); *id.* (noting parties "obtain[ed] judgment of foreclosure by fraud"); *id.* at 27 ("If Gina Tolman had not submitted this fraudulent affidavit to [the] [S]tate [C]ourt [and] federal bankruptcy court, [P]laintiff would not have lost the [Subject Property]."); *id.* at 28 (arguing that Defendant U.S. Bank obtained "judgment of foreclosure by fraud upon [the] [S]tate [C]ourt"); *id.* at 29 (arguing damages are appropriate because "actual foreclosure was illegal [and] wrongful").)

In his request for relief, Plaintiff asks that the Court order Defendants to make certain compulsory counterclaims, "because [the] origin of both claims [and] counterclaims is *wrongful foreclosure*." (*Id.* at 29–30 (emphasis added).) Plaintiff's allegations leave no doubt that there is a "*causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen*, 481 F.3d at 98. A federal plaintiff cannot "avoid *Rooker-Feldman* simply by clever pleading." *Hoblock*, 422 F.3d at 88. The Court therefore finds that despite his assertions to the contrary, Plaintiff's Amended Complaint "*does* complain of an injury caused by the state-court judgment and seek[s] that judgment's reversal." *Id.* (emphasis added). Accordingly, Plaintiff's claims premised on fraud in the State Court Foreclosure Action are barred by the *Rooker-Feldman* doctrine.

### 2.  Collateral Estoppel and Res Judicata

Even if Plaintiff's claims are "outside *Rooker-Feldman*'s compass," *Hoblock*, 422 F.3d at 86, a "subsequent federal suit could [also], of course, be barred by ordinary preclusion principles," *id.* at 88 n.6.  Here, collateral estoppel and res judicata similarly preclude Plaintiff's claims.

Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit."  *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  *McKithen*, 481 F.3d at 105 (internal quotation marks omitted); *see also Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same).  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding."  *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

"Under New York law, the doctrine of claim preclusion [or res judicata] bars litigation of

claims or defenses that were or could have been raised in a prior proceeding where that prior proceeding resulted in a final judgment on the merits and arose out of the same factual grouping as the later claim, even where the later claim is based on different legal theories or seeks dissimilar or additional relief." *L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs*, 345 F. Supp. 2d 405, 409–10 (S.D.N.Y. 2004); *see also Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (noting that "New York has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief" (italics and internal quotation marks omitted)), *adopted by* 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013).[13]

"This transactional doctrine also applies to defenses that could have been litigated in a foreclosure action." *Hinds*, 2012 WL 6827477, at *5 (internal quotation marks omitted); *see also Beckford v. Citibank N.A.*, No. 00-CV-205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (same).  Accordingly, "[a] [f]oreclosure [j]udgment is final as to all questions at issue between . . . parties, and concludes all matters of defense that were or might have been litigated in the [f]oreclosure [a]ction." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016); *see also Drew v. Chase Manhattan Bank, N.A.*, No. 95-CV-3133, 1998 WL 430549, at *6–7 (S.D.N.Y. July 30, 1998) ("Under New York law[,] '[a] state court judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure

---

[13] The Court applies New York's preclusion rules because "a prior state court decision [is given] the same preclusive effect that the courts of that state would give it."  *Colon*, 58 F.3d at 869 n.2.

action are concluded.'" (alteration omitted) (quoting *Gray v. Bankers Tr. Co.*, 442 N.Y.S.2d 610, 612 (App. Div. 1981))).

### a.  Standing

Plaintiff asserts numerous claims predicated on SPS and U.S. Bank's purported lack of interest and resulting lack of standing to foreclose on the Subject Property.  As Plaintiff could have and expressly did raise these arguments in prior proceedings against Defendants SPS and U.S. Bank, collateral estoppel and res judicata bar his claims.

"New York law provides that privity extends to parties who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (internal quotation marks omitted). SPS "is [the] mortgage servicer," (Am. Compl. 2; *see also* Pl.'s Opp'n 3), and "district courts generally have found there to be privity between a mortgage servicer and the owner of [the] mortgage," *Best v. Bank of Am., N.A.*, No. 14-CV-6546, 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015); *Yeiser*, 535 F. Supp. 2d at 423 ("GMAC's interest in the mortgage loan was represented by MERS because GMAC serviced the loan at the time of the foreclosure action . . . ."). U.S. Bank, as indentured trustee, is a successor-in-interest to the Mortgage and Note. Thus, when the State Court issued the Foreclosure Judgment and found that "[Chase Bank] ha[d] established prima facie entitlement to a judgment of foreclosure and sale," (State Court Dec. 2010 Decision 5), it necessarily decided the issue of SPS and U.S. Bank's standing.

Additionally, in its decision on the motion for summary judgment, the Bankruptcy Court held that U.S. Bank "clearly ha[d] standing to file and pursue the Proof of Claim in this case, given that [U.S. Bank] [wa]s a bona fide and proper holder of the Note secured by an

undisputedly perfected recorded mortgage."  (*See* Howard Decl. Ex. 11, at 92 ("Bankr. Hr'g Tr.").)  On appeal, this Court affirmed that decision in a bench ruling on June 27, 2014.  (*See* Howard Decl. Ex. 15, at 39 ("Emergency Stay Order") ("[T]he Bankruptcy Court properly held that U.S. Bank, as the trustee . . . of the trust, clearly had standing to file and pursue the Proof of Claim in the case . . . .").)

### b.  1998 and 2001 Assignments & Loan Modification Agreement

Plaintiff's claims with respect to the allegedly hidden September 1998 assignment of mortgage are also barred by collateral estoppel.  (*See* Am. Compl. 6–7, 9; *see also* Pl.'s Opp'n 7, 8.)  Plaintiff litigated this issue before the Bankruptcy Court in the course of Plaintiff's Second Bankruptcy Petition.  (*See* Bankr. Hr'g Tr. 85 (finding "Long Beach's endorsement on the Note in blank is valid"); *see also id.* at 92 ("[U.S. Bank] clearly has standing to file and pursue the Proof of Claim in this case, given that it is a bona fide and proper holder of the Note secured by an undisputedly perfected recorded mortgage.").)

Collateral estoppel similarly bars Plaintiff's arguments as to the validity of the 2001 Assignment and Loan Modification Agreement, as Plaintiff raised these arguments in the State Court Foreclosure Action.  (*See* Aff'n in Supp. of Order to Show Cause ¶ 36 ("Since [Chase] did not have the capacity to acquire the loan, the assignment to [Chase] was a nullity.  Therefore, [Chase] lacks standing to foreclose on the loan."); *id.* ¶ 47 ("[T]he assignment, per se, was defective."); *id.* ¶¶ 60–62 (arguing that "the Settlement Agreement and Releases and the Loan Modification Agreement between [Nath] and LaSalle" "is void" because LaSalle no longer existed at the time the agreements were executed); State Court Dec. 2010 Decision 3 (denying "[Nath's] motion for an order rescinding the loan modification"); *id.* at 4 & n.5 (relying on portions of the Tolman Affidavit detailing the 2001 Assignment and noting that Nath "does not

refute the contents of the Tolman [A]ffidavit").)

Finally, Plaintiff's claims of forgery, (*see* Am. Compl. 9–11 (alleging that Plaintiff's "signature was lifted from [the] original genuine note [and] . . . implanted on[]to . . . [a] new note") *id.* at 20 ("[The] allonge . . . is a forged document")), were similarly raised and rejected by this Court on appeal from Plaintiff's Second Bankruptcy, (*see* Emergency Stay Order 39 ("[E]ven though there was some discussion about the signatures, the Note was shown to Judge Drain . . . .  [T]he notion that . . . Credit Suisse is going to cheat some other bank . . . and fraudulently digitally remove a signature and put it on another note, there is no basis in fact for that whatsoever.").)

Accordingly, in addition to the *Rooker-Feldman* doctrine, collateral estoppel and res judicata serve as an alternative basis for this Court to dismiss Plaintiff's claims regarding the concealment of the 1998 Assignment and the invalidity of the 2001 Assignment and Loan Modification Agreement.

### 3.  Plaintiff's Additional Claims

In addition to his allegations that Defendants lack standing and challenges to the various assignments and agreements in connection with the Subject Property, Plaintiff raises a myriad causes of action that fail to state a claim.

### a.  FDCPA

Plaintiff also asserts that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., by "false[ly] advertising in [the] notice of sale of the [Subject Property] . . . that Chase Manhattan [B]ank [wa]s the collector of the debt [and] . . . [the] party to whom [sic] debt is owed," (Am. Compl. 13–14).  To state a claim under the FDCPA, a plaintiff must show "(1) []he has been the object of collection activity arising from

consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011) (internal quotation marks omitted); *see also Carrington v. Chrysler Fin.*, No. 10-CV-1024, 2010 WL 1371664, at *1 (E.D.N.Y. Apr. 6, 2010) (same).  Plaintiff fails to meet any of the three elements as he offers no factual allegations to sustain his claim.

Section 1692a(6) of the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Nothing in the Amended Complaint indicates Plaintiff was the target of collection activity or that Defendants are "debt collectors," as defined in § 1692a(6), engaging in prohibited collection activity pursuant to the FDCPA.  In the "notice of sale of the [Subject Property]" at public auction that Plaintiff references, (*see* Am. Compl. 13), "Chase Manhattan Bank" is identified only as the *plaintiff* in the action against Nath that resulted in the judgment of foreclosure and sale, (*see* Howard Decl. Ex. 9 ("Notice of Public Auction")).  Indeed, "Plaintiff never identifies any creditor, inquirer, collector, amount, late payment, [or] inaccurate representation" to support his allegations. *Ogbon*, 2011 WL 347222, at *4.  Accordingly, Plaintiff's FDCPA claim against Defendants is dismissed for failure to state a claim.

### b.  RPAPL § 1404 and 18 U.S.C. § 709

Plaintiff further asserts that Defendants committed civil and criminal fraud under New York Real Property Actions and Proceedings Law ("RPAPL") § 1404 and 18 U.S.C. § 709 by including Chase on the Notice of Public Auction and falsely advertising "[a] federal [b]ank

which does not exist." (Am. Compl. 16.) In response, Defendants assert that Plaintiff cannot maintain a claim under either law because first, RPAPL § 1404 was repealed in 2009 and alternatively, during its time in effect, exempted residential property, (*see* Defs.' Mem. 21–22), and second, there is no private right of action under 18 U.S.C. § 709, (*see* Mem. of Law in Reply to Pl.'s Opp'n and in Further Supp. of Defs.' Mot. To Dismiss Pl.'s Am. Compl. ("Defs.' Suppl. Mem.") 6–7 (Dkt. No. 17)). The Court agrees with Defendants on both points.

Enacted on July 7, 1998, the provisions of Article 14 of RPAPL governed the foreclosure of mortgages by power of sale and remained in effect through July 1, 2001. *See* L.1998, c. 231, § 1, eff. July 7, 1998. An amendment to Article 14 extended the law's effect through July 1, 2009, *see* L.2001, c. 76, § 1, eff. June 29, 2001, when the statute was repealed according to the original sunset provision, *see* L.1998, c. 231, § 2. Thus, Plaintiff's claim pursuant to § 1404, brought in November 2015, fails to state a claim.

However, even if § 1404 still had force, Plaintiff could not sustain his claim as § 1404 explicitly exempted residential mortgages such as the Subject Property. *See* N.Y. Real Prop. Acts. Law § 1404 (repealed 2009) (detailing when a mortgage may be foreclosed and "excepting a mortgage on real property improved solely by (a) a residential building containing less than six dwelling units, including structures and improvements appurtenant thereto . . . ."). Therefore, Plaintiff's cause of action under RPAPL § 1404 must be dismissed.

Under criminal statutes, such as 18 U.S.C. § 709, no private right of action exists unless there is a clear statutory basis for such an inference. *See Cort v. Ash*, 422 U.S. 66, 79 (1975). The text of § 709 makes no reference to a civil cause of action, *see generally* 18 U.S.C. § 709, and Plaintiff has made no argument in response to Defendants' argument that none exists, (*see generally* Pl.'s Opp'n). Because "there [i]s nothing more than a bare criminal statute, with

absolutely no indication that civil enforcement of any kind was available to anyone," *Cort*, 422 U.S. at 79–80, Plaintiff's claims under 18 U.S.C. § 709 are dismissed for failure to state a claim.

### c.  Emotional, Physical, and Reputational Damage

The Amended Complaint contains various allegations relating to emotional, physical, and reputational damages Plaintiff suffered as a result of "this illegal foreclosure action."  (*See, e.g.*, Am. Compl. 24, 25, 27–28.)  Plaintiff's purported causes of action include infliction of pain and suffering by Defendants, damage to Plaintiff's reputation in the community, damage to Plaintiff's credit reports, Plaintiff's need for punitive damages, and a claim that Defendants caused Plaintiff to suffer stress-induced psoriasis, (*see, e.g.*, *id.*), each of which Defendants contend fails to state a claim, (*see* Defs.' Mem. 22–24).

Plaintiff provides no basis for his cause of action for reputational damage.  For example, Plaintiff's 30th cause of action asserts that "[a]s a result of this illegal foreclosure action by [D]efendants[,] [a] tremendous amount of damage has been done to [P]laintiff's reputation in the community."  (Am. Compl. 24.)  Plaintiff alleges that "[a]ll [D]efendants individually [and] jointly are responsible for damages," (*see id.*), but has not enumerated any specific harms arising from the alleged loss of reputation.  Importantly, Plaintiff alleges that these harms resulted from an "illegal foreclosure action," but each court to adjudicate Plaintiff's claims has consistently upheld the validity of that action.  Even accepting as true all of Plaintiff's allegations, Plaintiff has failed to plead facts that "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Accordingly, causes of action 29, 30, 31, 32, and 36 are dismissed for failure to state a claim.

<u>d.  Claims Against Locke Lord</u>

Plaintiff asserts various claims against Locke Lord and individual Locke Lord attorneys for failure to file an amended attorney affidavit, submission of a false affidavit, aiding and abetting, intentional misconduct, violation of consent orders from the Office of the Comptroller of the Currency, the Federal Trade Commission, and the Department of Housing and Urban Development, violation of the rules of professional conduct and New York Judiciary Law § 487, and other criminal behavior.  (*See generally* Am. Compl. 8–9, 11–13, 15–16, 22–24, 28–29.) While Plaintiff asserts that these claims "ha[ve] nothing to do with the foreclosure judgment issued by [the] [S]tate [C]ourt," (Am. Compl. 9), each of Plaintiff's claims against Locke Lord is borne from his discontent with his losses in previous proceedings.  To the extent that Plaintiff seeks to base these allegations against Locke Lord on the other grounds he has asserted for relief, the Court rejects these arguments for the reasons already set forth herein.

Furthermore, the Court cautions Plaintiff against "flinging baseless accusations of fraud . . . at opposing counsel merely for taking a position adverse to [Plaintiff's]."  *Adams v. IntraLinks, Inc.*, No. 03-CV-5384, 2005 WL 1863829, at *4 n.40 (S.D.N.Y. Aug. 5, 2005).[14]  To the extent these claims are not barred by *Rooker-Feldman*, collateral estoppel, or res judicata as detailed above, Plaintiff's claims against Locke Lord are dismissed for failure to state a claim as they rest solely on conclusory allegations.

---

[14] Plaintiff's status as a pro se litigant does not insulate him from sanctions under Rule 11 of the Federal Rules of Civil Procedure.  *See Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) (noting "Rule 11 applies both to represented and pro se litigants" (italics omitted)); *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 n.9 (S.D.N.Y. 2005) ("It is well established that Rule 11 applies to pro se litigants." (italics omitted)), *aff'd*, 2008 WL 749564 (2d Cir. 2008).

<u>e.  Claims Asserted in Unapproved Filings</u>

After filing the Amended Complaint and opposition to Defendants' Motion, Plaintiff, without permission from the Court, filed or attempted to file additional papers in the form of amended pleadings, letters to the Court, and sur-reply briefs purporting to reargue Plaintiff's prior claims and raise various supplemental claims.  (*See, e.g.*, Dkt. Nos. 19, 21, 23, 25, 26.) Plaintiff has been cautioned before about raising claims in unauthorized briefs, *see Nath*, 2016 WL 5791193, at *10, and the Court will not address these claims, for the reasons stated in its prior Opinion, *see Conkling v. Brookhaven Sci. Assocs., LLC*, No. 10-CV-4164, 2012 WL 2160439, at *6 n.6 (E.D.N.Y. June 12, 2012) (noting that "new claims not specifically asserted in the complaint may not be considered by courts in deciding a motion to dismiss" (alteration and internal quotation marks omitted)).

## III.  Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion To Dismiss in its entirety.

Because Plaintiff—an undeniably experienced litigant—has already amended his Complaint in the instant Action, but has still failed to state a claim, the Amended Complaint is dismissed with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around").  Courts are reluctant to grant further leave to amend where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless." *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (alteration and internal quotation marks omitted)).  Over the course of Plaintiff's 15 years of litigating his interest in the Subject Property, he has had an orchard's

worth of apples. And as the Court is still adjudicating three open cases in Plaintiff's fruit basket

of lawsuits, he will again have his day in Court.

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No.

13), and close this case.

SO ORDERED.

DATED:     February 28, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

29